IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORENO ET AL,<br><br>    Plaintiff,<br><br>v.<br><br>AUTOZONE, INC,<br><br>    Defendant. | No. C05-04432 MJJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND** |

## INTRODUCTION

Before the Court are two motions: (1) Defendant Autozone, Inc.'s ("Autozone") Motion for Summary Adjudication of Plaintiff Claudia Moreno's claims first, second, third, fourth, seventh, eighth, and unfair business practices claims[1] (Docket No. 85); and (2) Plaintiffs' Motion For Order Granting Leave To Amend Plaintiffs' Complaint. (Doc. No. 105.) Both motions are opposed. Oral argument on Defendant's motion took place on February 13, 2007.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Adjudication, **GRANTS IN PART** and **DENIES IN PART** Plainniff's Motion For Order Granting Leave To Amend, and **VACATES** the April 10, 2007 hearing in this matter.

## FACTUAL BACKGROUND

---

[1] The Court previously stayed claims five, six, and four (to the extent that it is premised on alleged meal and rest period violations). Because the legal grounds for Defendant's motion would apply to the stayed claims, Defendant urges the Court to summarily adjudicate the stayed claims as well.

1         Plaintiff Moreno ("Moreno") seeks remuneration for a series of claimed wage and hour law
2 violations against her former employer Autozone.  Unless otherwise noted, the Court finds the
3 following facts to be undisputed.  Moreno quit her job with Autozone shortly before April 19, 2005.
4 On June 24, 2005, she submitted a complaint against Autozone to the California Labor
5 Commissioner ("CLC") for unpaid wages from February 2005 through April 3, 2005.  On June 27,
6 2005, she filed a voluntary petition for personal bankruptcy under Chapter 7.  She was represented
7 by Mario Langone, Esq.  The petition requires the debtor to list all payments made to any persons,
8 including attorneys, for, *inter alia*, preparation of a petition in bankruptcy within one year
9 immediately before the commencement of the current case.  Plaintiff listed a March 8, 2004 payment
10 to Mr. Langone for attorneys' and filing fees.

11         As part of the filing process, the debtor must complete a Petition of Financial Affairs, which
12 requires the debtor to list all suits and administrative proceedings to which the petitioner is or was a
13 party within one year immediately proceeding the commencement of the bankruptcy case.  Moreno
14 represented that she was not a party to any such suits or proceedings.  Nor did Moreno identify any
15 debts owed by Defendant for unpaid wages or penalties on "Schedule B- Personal Property" in
16 response to questions concerning: (1) other liquidated debts; (2) other contingent and unliquidated
17 claims of every nature; (3) accounts receivable; and (4) other personal property of any kind not
18 already listed.

19         On August 8, 2005 the Bankruptcy Trustee notified the Bankruptcy Court and creditors that
20 he had met with Moreno on August 4, 2005 and, having conducted a "diligent inquiry for assets,"
21 reported that Moreno has no assets that were available for liquidation and distribution to the
22 creditors.  On September 16, 2005, the Bankruptcy Court entered an order proposing closure of the
23 bankruptcy estate and setting a deadline for filing any objections to the proposed case closure by
24 October 17, 2005.

25         On October 15, 2005, Moreno filed the instant lawsuit alleging the following: (1) "unpaid
26 wage claim for relief"; (2) "overtime wage claim for relief"; (3) "minimum wage claim for relief";
27 (4) "statutory wage claim for relief"; (5)"missed claim period claim for relief"; (6) "missed meal
28 period claim for relief"; (7) "breach of contract claim for relief"; and (8) "late payment claim for

2

relief"; and (9) "conversion of wages." The caption of the Complaint also lists a claim for unfair business practices. Moreno did not amend her bankruptcy petition to include her claims.

In an Order dated November 18, 2005, the Bankruptcy Court discharged Moreno's debts ($20,562). The Bankruptcy Court, however, did not discharge the Trustee and issue a final decree closing the bankruptcy until December 15, 2005. At no time did Moreno alert the Bankruptcy Court of her wage claims against Defendant.

This Court stayed Plaintiffs' fifth and sixth claims, and the fourth claim (to the extent that it is premised on alleged meal and rest period violations) based on Plaintiffs' pending appeal of an earlier class action involving Defendant, and the California Supreme Court's decision on whether the remedy provided in Labor Code § 226.7 is a wage or a penalty. (Doc. Nos. 61 and 82.) In May 2006, this Court granted Defendant summary judgment if favor of Defendant on Plaintiffs' conversion claim.

## LEGAL STANDARD

### A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a

reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### B.     Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a pleading once as a matter of course before a responsive pleading is served, after that the party may amend the pleading only by leave of court or by written consent of the adverse party. Additionally, Rule 15(a) instructs the Court that, "leave shall be freely granted when justice so requires." The Supreme Court has made it clear that courts are to carefully heed this mandate. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, "[t]his liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). In determining whether to grant leave to amend, the Court considers the following factors: (1) whether the movant unduly delayed in bringing the motion, (2) evidence of bad faith or dilatory motive on the part of the movant; (3) the movant's repeated failure to cure deficiencies by previous amendments; (4) prejudice to the opposing party; and (5) futility of amendment. *Id.* Generally, the court engages in this analysis with all inferences in favor of granting the motion. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). While each of these factors is relevant to determining the propriety of leave to amend, the crucial factor is the resulting prejudice to the opposing party. *Howey v. Radio Corp. of Am.*, 481 F.2d 1187, 1190 (9th Cir. 1973). "Absent prejudice, or a strong showing of any of the remaining factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Thus, if the party opposing the motion fails to establish any of these factors, "the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182.

## ANALYSIS

### I.     The Propriety of Defendants' Motion For Summary Adjudication

Defendant moves for summary adjudication on the grounds that Moreno lacks standing to prosecute claims that accrued prior to her filing for bankruptcy, and judicial estoppel. As a preliminary matter, Moreno argues that Defendant's Rule 56 motion for summary adjudication is an

4

improper vehicle for addressing such issues since the Motion does not address issues of liability. Moreno offers no legal basis for this argument. Where there is no triable issue of material fact that a plaintiff lacks standing to sue, the Court may properly dismiss her claims. *See Williams v. Kaiser Permanente*, 2000 W.L. 1262657, *3 (N.D.Cal. 2000). Similarly, summary adjudication is appropriate where the plaintiff is judicially estopped from asserting claims. *See Hay v. First Interstate Bank*, 978 F. 2d 555, 556 (9th Cir. 1992). The Court finds nothing procedurally inappropriate about Defendants' Motion, and turns its attention to the merits of Defendants' arguments.

## II.     The Effect of Moreno's Chapter 7 Bankruptcy on Her Ability to Prosecute Her Claims.

### A.     Standing

Defendant argues that Moreno lacks standing to prosecute all claims that accrued prior to the filing of her bankruptcy since those claims are the property of the bankruptcy estate, and only the trustee may pursue them. Moreno counters that her failure to amend her bankruptcy petition was unintentional and inadvertent, and that Defendant's Motion is premature because the Trustee has not had an opportunity to release or abandon the claims.

The filing of a bankruptcy petition creates an estate that includes all of the debtor's legal and equitable interests in property on the filing date. 11 U.S.C. § 541(a). Any causes of action previously possessed by the petitioner become the property of the bankrupt estate after a bankruptcy petition is filed. *Sierra Switchboard Co. v. Westinghouse Elec. Co.*, 789 F. 2d 705, 707 (9th Cir. 1986); *In re Ozark Restaurant Equip. Co., Inc.,*. 816 F. 2d 1222, 1225 (8th Cir. 1987). The trustee in a Chapter 7 bankruptcy is the sole representative of the estate. *Harris v. St. Louis University*, 114 B.R. 647, 648 (E.D.Mo. 1990). After a trustee is appointed, the debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 bankruptcy petition was filed. *Id.*; *see also Williams v. Kaiser Permanente*, 2000 W.L. 1262657, *3 (N.D.Cal. 2000). A debtor can regain standing if a cause of action is abandoned by the trustee. *Harris*, 114 B.R. at 649. But a cause of action that was never disclosed in the bankruptcy petition cannot be abandoned. *Id.*; *Williams*, 2000 W.L. 1262657, *3. Instead, such claims belong to the estate pursuant to 11 U.S.C. § 554(d), which provides: "[u]nless the court orders otherwise, property of the estate which is not

5

abandoned under this section and is not administered in the case remains property of the estate."

Here, Defendant has provided sufficient evidence to shift the burden to Moreno to establish a genuine issue of material fact as to whether she has standing to pursue her claims. Specifically, Moreno's employment with Defendant ended in April 2005. On June 24, 2005, she submitted a complaint against Defendant to the CLC for unpaid wages - three days before she filed a voluntary petition for personal bankruptcy under Chapter 7. Moreno did not disclose her claims against Defendant in her bankruptcy petition. Nor did she amend her petition or otherwise alert the Bankruptcy Court of her claims even after she filed the instant suit. After filing for bankruptcy Moreno's claims became the property of the bankruptcy estate and Moreno, thereafter, lost standing to pursue them. Since the claims were not scheduled, they could not be abandoned.

Moreno attempts to create a triable issue of fact as to whether her claims against Defendant accrued before she filed for bankruptcy, and contends that Moreno should be allowed to pursue her claims since any failure to disclose them was inadvertent. More particularly, pointing to the fact that the petition indicates Moreno paid her bankruptcy attorney in March 2004, Moreno argues:

> There is no reason to think that there were any other payments by [Moreno] to [the attorney], as he certainly would have known of them and filed an amendment to reflect them. Therefore, it appears highly unlikely that the initial payment was for anything other than preparing and filing the bankruptcy documents.
>
> There is every reason to believe [Moreno] initiated the bankruptcy process at that time - March 2004 - and furnished her bankruptcy attorney with all relevant information concurrently. . . . From [Moreno's] standpoint, the timing of the actual filing . . . was apparently an unfortunate accident that her bankruptcy attorney caused. Her actions and direct involvement long predated her suit against [Defendant].

(Plf's Opp. 4:13-5:1.) She then contends that Defendant has failed to show that Moreno was actively involved in the bankruptcy proceedings during either the interval or after the filing was made, or that her failure to amend her petition was anything other than inadvertent. (*Id.* 5:2-7.) The Court rejects these arguments. Most importantly, Moreno has proffered no evidence in support of thereof.[2] Speculation about when Moreno intended to initiate the bankruptcy does nothing to change the fact that her petition was filed on June 27, 2005 - after her claims against Defendant accrued.

---

[2] Notably absent is any declaration from Moreno addressing these claims.

6

1 Likewise, supposition about what the bankruptcy attorney did nor did not do, and the reasons behind
2 Moreno's failure to disclose her claims to the Bankruptcy Court, cannot carry the day.  Indeed, it is
3 undisputed that Moreno ended her employment with Defendant in April 2005, filed a complaint
4 against Defendant with the CLC in June 2005, yet failed to disclose her claims to the Trustee during
5 the August 4, 2005 meeting.  Finally, Moreno has not provided any legal authority supporting the
6 proposition that a debtor can maintain standing to sue on claims that accrued before filing for
7 bankruptcy by mistakenly failing to disclose them, and the Court knows of none.

8 Moreno next argues that the Court should decline to rule on Defendant's motion based on
9 representations in a declaration submitted by Moreno's counsel, Mr. Clark.  Therein he states he has
10 communicated with Crista Bispo with the office of the Trustee for Moreno's estate who, according
11 to Mr. Clark: "indicated that, in all likelihood, the claims asserted in this lawsuit would have been
12 exempted from the bankruptcy and that there did not appear to be any reason to reopen the
13 bankruptcy." (Clark Decl., ¶ 2.)  Mr. Clark also requested that the Trustee state whether he will
14 release or abandon the claims, and urges this Court to await the Trustee's response.  (*Id.*, Exh. A.)[3]

15 The Court finds Moreno's position problematic for a number of reasons.  First, Moreno asks
16 the Court to accept her attorney's hearsay testimony for the truth of the matter asserted, something
17 that it cannot do.  Fed. R. Evid. 801, 802.  And even if it could, the purported assurances of Ms.
18 Bispo are speculative at best.  Further, Ms. Bispo's alleged comments were premised on Mr. Clark's
19 representation that Moreno's claims against Defendant would *probably* yield no more than $1,000.
20 But Mr. Clark admits that, in so saying, the remark was only considering Moreno's second
21 employment period with Defendant in early 2005, not damages Moreno is seeking for purported
22 wage violations during Moreno's employment with Defendant in 2001 and 2002.  Here again,
23 Moreno is asking the Court to rely on speculation, this time as to the worth of her claims.  In
24 addition, Ms. Bispo's comments lack foundation to the extent that they were premised on

---

[3] Defendant makes several evidentiary objections to Mr. Clark's Declaration and requests that this Court strike Mr. Clark's declaration. (Doc. No. 99.) Although the Court finds many of Defendant's objections meritorious, it sees no reason to strike the Declaration from the Court's file. As such, the Motion to Strike is **DENIED**. The Court also notes that Mr. Clark filed an Amended Declaration on February 7, 2007 omitting most of the material to which Defendant objected. The Court, however, still addresses the substance of the original Clark Declaration since some of the arguments in Moreno's Opposition are premised thereon.

7

understated demands, and because Moreno has not established that Ms. Bispo is authorized to make determinations about exemptions or re-opening estates. *See* Fed. R. Evid. 602. Mr. Clark's letter to the Trustee, by contrast, estimates that Moreno's damages may reach $5,000, plus an incentive payment from the Court if she remains a lead plaintiff, and inquires whether he will reopen the bankruptcy or abandon the claims.

It is undisputed that Moreno currently lacks standing to prosecute her claims against Defendant, but the Court also cannot guess what, if anything, the Trustee may do in response to Moreno's inquiries. As such, at this time the Court finds it appropriate to dismiss Moreno's claims, including the stayed claims, without prejudice to her right to reassert them in the event that the Trustee takes the appropriate action to abandon the claims.

### B. Judicial Estoppel

Although the Court finds that dismissal is appropriate at this juncture, the Court addresses Defendant's judicial estoppel argument directed at Moreno's claims for the sake of completeness.

Defendant argues that Moreno should be judicially estopped from prosecuting claims that she did not reveal to her creditors during the bankruptcy. Moreno counters that judicial estoppel is inappropriate here since Moreno would gain no advantage from her inconsistent positions, and Moreno did not intentionally mislead the courts or her creditors.

In a Chapter 7 bankruptcy, the debtor seeks to be completely absolved of all debts, and any available assets are liquidated for the benefit of the creditors. *See Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 425 (N.D. Cal. 1999). Hence, the debtor has an ongoing duty to disclose all assets. 11 U.S.C. § 521(1); Fed. R. Bankr. P. 1007(b)(1), 1009(a). Indeed:

> the success of all bankruptcy laws requires a debtor's full and honest disclosure. Allowing [the plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets.

*Burnes v. Pemco Aeroplex, Inc.*, 291 F. 3d 1282, 1288 (11th Cir. 2002).

Judicial estoppel precludes a party from gaining an advantage by taking a position in one

8

action, and then taking an inconsistent position in another action. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2000); *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F. 3d 597, 600, 605 (9th Cir. 1996). It is an equitable doctrine invoked by the court at its discretion. *See Morris v. California*, 966 F. 2d448, 453 (9th Cir. 19991), *cert. denied*, U.S. 831, 113 (1992). A debtor who fails to disclose potential claims during a bankruptcy may be judicially estopped from asserting those claims later on. *See Hay,* 978 F. 2d at 556. Judicial estoppel, however, is inapplicable where a debtor's prior position was taken because of a good-faith mistake and not as part of a scheme to mislead the court. *Stallings v. Hussmann Corp.*, 447 F. 3d 1041, 1049 (8th Cir. 2006) citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3rd Cir. 1996). In the Ninth Circuit, judicial estoppel applies in a subsequent litigation only if the prior court relied on the inconsistent assertion. *Donato*, 230 B.R. at 421.

  Defendants rely on *Hay* to support their position. In *Hay*, the court judicially estopped the plaintiff from proceeding with a lawsuit against First Interstate Bank, one of the major creditors in its Chapter 11 bankruptcy. 978 F. 2d at 557. During the course of the bankruptcy, the plaintiff became aware of facts that lead it to believe that it had legal claims against First Interstate, but the plaintiff did not disclose the claims. Rather the plaintiff negotiated a settlement with First Interstate, which the Bankruptcy Court had approved, and filed suit against First Interstate after the bankruptcy case was closed. *Id.* at 556. On that record, the court could reasonably conclude that disclosure of the claims would have changed the course of the bankruptcy proceedings.

  The *Hay* Court relied on *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F. 2d 414, 415 (3rd Cir. 1988). There too the bankruptcy debtor was estopped from prosecuting claims against a creditor after the bankruptcy case was closed. The plaintiff's subsequent claims were premised on alleged breaches of the loan agreements that gave rise to some of the debt at issue in the bankruptcy proceedings. *Id.* at 415-416. The Court concluded:

> We can assume that revealing the potential action may have also impacted upon the bank's decision to enter into the stipulation establishing the extent and validity of its lien against Oneida and to vote for confirmation. The practical effect of a successful prosecution of Oneida's claim would be to require the bank to make restitution of the amount realized on its bankruptcy claim, since Oneida's present action calls into question the bank's right to collect on its secured debt. This would also constitute a collateral attack on the bankruptcy court's

9

> order confirming the reorganization plan.  In such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings, particularly where, as here, the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications.

*Id.* at 418.

Judicial estoppel, however, is not limited to situations where the subsequent claims are asserted against a creditor of the bankruptcy estate.  In *Burns*, *supra*, the plaintiff was judicially estopped from pursuing discrimination claims against his former employer, which was not a creditor, where such claims were not disclosed during bankruptcy proceedings.  The court noted "[it] is unlikely that [the plaintiff] would have received the benefit of a conversion [from a Chapter 13] to a Chapter 7 [bankruptcy] followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages.  *Burns*, 291 F. 3d at 1288.

In *Hays*, *Oneida*, and *Burns*, the record permitted an inference that disclosure of the claims would have altered the course of the bankruptcy proceedings.  Put another way, the facts of each case demonstrated that the bankruptcy court, the creditors, or the trustee relied on the debtor's prior inconsistent position to the debtor's advantage in the subsequent proceedings.  Under such circumstances, judicial estoppel was appropriately applied to preserve the integrity of the bankruptcy proceedings and prevent an unjust result.  Here, the Court concludes that Defendants have failed to proffer sufficient evidence to shift the burden to Moreno to demonstrate a triable issue as to whether judicial estoppel is appropriate.  While it is undisputed that Moreno did not disclose the present claims, the value of those claims is uncertain, and the effect, if any, that disclosure would have had on the course of the bankruptcy proceedings is purely speculative.  This is not a situation where Moreno seeks to recover from one of her creditors, or where the amount in controversy is clearly established as being so large that disclosure would have undoubtedly changed the outcome of the bankruptcy proceedings. Based on the present record, the Court declines to apply judicial estoppel to Moreno's claims, and denies that portion of Defendants' Motion without prejudice to Defendant's right reassert a judicial estoppel argument in the future if appropriate.

///

///

10

**III.    Plaintiffs' Request To Add Civil Penalties under California's Private Attorneys' General Act.**

Plaintiffs seek leave to amend their Complaint to add new remedies under California's Private Attorneys' General Act ("PAGA"). Because the Court, for the reasons above, has determined that dismissal of all of Plaintiff Claudia Moreno's causes of action is appropriate, Moreno's request to add PAGA remedies is moot. Accordingly, as to Plaintiff Moreno's claims, the Court denies Plaintiff's Motion without prejudice. The Court will however, grant leave to Plaintiff Michele Medrano to amend the complaint to add PAGA remedies. Given the liberality of amendment that Rule 15(a) requires, the Court finds no basis for concluding that amendment should not be permitted here.

With respect to Defendants' allegation that Plaintiffs' request for leave to amend violates this Court's stay order, this Court construes Plaintiffs' request for leave to amend as a request for relief from this Court's stay order for the limited purpose of adding PAGA remedies to the Complaint, and further finds such relief from the stay order appropriate in the interests of justice. Plaintiffs have a legitimate interest in seeking leave to amend their complaint within the 60-day window required by PAGA, and this Court's stay order was not intended to prejudice Plaintiffs' ability to timely assert (as opposed to prosecute) legal claims and remedies that they may have relating to meal and rest period violations.

The Court also does not consider Plaintiffs' delay in seeking PAGA remedies in this Court, though considerable, to be so dilatory as to warrant denial of leave to amend. Because the Court did not formally approve the proposed order submitted with the parties' February 2006 joint case management statement (Docket No. 13), nor the parties' March 2006 proposed pre-certification case management order, the Court declines Defendant's invitation to analyze Plaintiffs' request for leave to amend under a Rule 16 rubric. Moreover, Defendants have made no showing of prejudice that would result from granting leave to amend, nor is prejudice likely given the stay order currently in effect in this case.

Finally, the Court does not find Defendant's arguments that the amendment would be futile to be persuasive. At this time, the Court declines to adopt Defendant's interpretation of *Caliber*

11

*Bodyworks, Inc. v. Superior Court*, 133 Cal. App. 4th 365 (2005) as establishing a blanket prohibition on the serving of notice relating to PAGA remedies after an action is commenced. As Defendant acknowledges, its own interpretation of *Caliber* is "difficult to reconcile" with *Caliber*'s finding that plaintiffs could subsequently follow the notice procedures and later request leave to amend. (Defendant's Opposition at 5 n.2.) Moreover, the Court is not persuaded by Defendant's arguments that the statute of limitations are a clear-cut bar to Plaintiffs' attempt to recover PAGA remedies. In any event, the Court considers these two issues – which go to the merits of Plaintiffs' proposed amended complaint – more amenable to resolution in a Rule 12 or Rule 56 context.

## CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Adjudication (Docket No. 85) for the reasons discussed above;

(2) **DISMISSES** all of Plaintiff Claudia Moreno's remaining claims **WITHOUT PREJUDICE** to her ability to reassert those claims, if appropriate, pending further action by the Bankruptcy Trustee;

(3) **DENIES** Defendants' Motion to Strike (Docket No. 99).

(4) **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion For Order Granting Leave To Amend (Docket No. 105) in the manner discussed above. Plaintiff Michele Mendrano shall have twenty (20) days from entry of this Order to file an amended complaint adding PAGA remedies. Leave to amend is denied as moot, and **WITHOUT PREJUDICE**, as to Plaintiff Claudia Moreno; and

(5) **VACATES** the April 10, 2007 hearing on Plaintiffs' Motion For Order Granting Leave To Amend.

**IT IS SO ORDERED.**

Dated: 4/6/2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE