UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA MORENO, *et al.*, | No. C-05-4432 CRB (EMC) |
| Plaintiffs, | |
| v. | **ORDER RE JOINT LETTER OF OCTOBER 30, 2007** |
| AUTOZONE, INC., | **(Docket No. 205)** |
| Defendant. | |

Currently pending before the Court is a discovery dispute in which Defendant asks that Plaintiff be compelled to produce documents related to nonparty witnesses, including but not limited to James McDaniel, Bert Knox, and Martin Veloz.[1] Mr. McDaniel, Mr. Knox, and Mr. Veloz submitted declarations in support of Plaintiff's motion for class certification. At least some of the documents related to other "putative class members" are identified in Plaintiff's privilege log of August 16, 2007. The specific documents sought by Defendant are: (1) responses to questionnaires, (2) witness statements, and (3) correspondence from the witnesses. For the reasons discussed below, the Court hereby **GRANTS** Defendant's motion to compel.

**I.   DISCUSSION**

A.   Possession, Custody, or Control

As a preliminary matter, the Court rejects Plaintiff's argument that she cannot be compelled to produce any documents because neither she nor her current counsel has any of the documents at

---

[1] For the reasons discussed at the hearing, the Court is not entertaining at this point any request to enforce the subpoenas served on Mr. McDaniel, Mr. Knox, and Mr. Veloz.

issue in her possession -- rather, her former counsel is in possession of the documents. Federal Rule of Civil Procedure 34 requires a party responding to a document request to produce not only documents in her possession or custody but also those in her control. Control is generally defined as the legal right to obtain the documents on demand and at times has been construed more broadly to include the practical ability to obtain the documents sought upon demand. *See Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 519 (D. Colo. 2003). Given that Plaintiff's former counsel appears to be in possession of the documents at issue because it was representing Plaintiff, Plaintiff should have the legal right to obtain the documents from former counsel on demand.

B.     Work Product Privilege

The main issue therefore is whether the documents are subject to any privilege. In the parties' joint letter, Plaintiff's former counsel asserted both the attorney-client and work product privileges. Plaintiff's current counsel, however, appears to have dropped the position that the attorney-client privilege is applicable (as the privilege is not asserted in Plaintiff's opposition brief) and focuses only on the applicability of the work product privilege. The Court therefore addresses only the work product privilege.

The work product privilege protects information "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The purpose of the privilege is "to give parties freedom and incentive to develop their own cases," *United States v. Fort*, 472 F.3d 1106, 1130 (9th Cir. 2007), and to "'prevent exploitation of a party's efforts in preparing for litigation.'" *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000). It is a qualified privilege that may be overcome if the party seeking disclosure of the privileged materials "shows that it has substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). If a court orders disclosure of work product, however, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Thus, "opinion work product," as opposed to "fact work

1  product,"[2] is typically considered core work product.  *Cf. In re Green Grand Jury Proceedings*, 492
2  F.3d 976, 980 (8th Cir. 2007) (stating that "opinion work product enjoys 'substantially greater
3  protection than ordinary work product'"; adding that opinion work product "'enjoys a nearly
4  absolute immunity and can be discovered only in very rare and extraordinary circumstances'"); *In re*
5  *Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664 (3d Cir. 2003) (stating that "opinion work product
6  protection is not absolute, but requires a heightened showing of extraordinary circumstances").

7  　　　　As noted above, the documents at issue are all involve putative class members -- that is, (1)
8  their responses to questionnaires, (2) their witness statements, and (3) correspondence from them.
9  The Court finds that Plaintiff has adequately demonstrated that these types of documents are all
10 protected by the work product privilege as they were prepared in connection with this litigation at
11 the solicitation of Plaintiff's former counsel.  *See* 6-26 Moore's Fed. Prac. -- Civ. § 26.70 [5][c]
12 (noting that an example of work product materials for which the opposing party may have
13 substantial need is a contemporaneous statement taken from, or made by, a witness).  However, it
14 appears that the documents at issue constitute only fact work product and not opinion work product.
15 *See, e.g.*, *In re Qwest Communs. Int'l, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 19129, at *16 (D.
16 Colo. Aug. 15, 2005) (stating that, "to the extent that during the interviews reflected in the BSF
17 Report an attorney made contemporaneous notes which purport to report or record, either in whole
18 or in part by direct quote or paraphrase, statements made by a witness, then those statements
19 constitute 'fact' work-product subject to discovery").  Arguably, the blank questionnaires are
20 opinion work product, but that point is moot since Plaintiff's former counsel voluntarily produced
21 the blank questionnaires to Defendant.  In addition, arguably, the draft declarations of Mr.
22 McDaniel, Mr. Knox, and Mr. Veloz are opinion work product, but there is nothing to establish that,
23 even if former counsel initially drafted the declarations (based on factual information provided by

---

[2] *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (stating that fact work product is "written or oral information transmitted to the attorney and recorded as conveyed by the client" while opinion work product is "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories"); *Gerstein v. United States DOJ*, No. C-03-04893 RMW, 2005 U.S. Dist. LEXIS 41276, at *47-448 (N.D. Cal. Sept. 30, 2005) (stating that fact work product "is 'factual material that is prepared in anticipation of litigation or trial'" while opinion work product is "'[w]here the selection, organization, and characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's representative'").

1  the witnesses) or otherwise participated in the drafting process, the drafts reveal counsel's theories,
2  opinions, or mental impressions.

3  C.    Waiver

4      Of course, the fact that the work product privilege applies is not the end of the story as
5  Defendant has argued that any privilege has been waived.

6      First, Defendant contends that the privilege has been waived because Plaintiff failed to
7  provide a privilege log for Request No. 8 (First Set) in a timely manner.  The Court does not agree
8  with Plaintiff's position that the documents at issue clearly do not fall within the scope of Request
9  No. 8 (First Set).  On the other hand, Request No. 8 (First Set) is not entirely clear as written by
10 Defendant.  Even taking into account Defendant's position that it clarified the document request by
11 February 2007, such that the privilege log was not provided until some six months later, the Ninth
12 Circuit, has "reject[ed] a *per se* waiver rule that "deems a privilege waived if a privilege log is not
13 produced within Rule 34's 30-day time limit."  *Burlington Northern & Sante Fe Ry. v. United States*
14 *Dist. Court*, 408 F.2d 1142, 1149 (9th Cir. 2005).  The Court therefore does not find a waiver based
15 solely on Plaintiff's delay.  No irreparable harm to Defendant has resulted from the delay.

16     Second, Defendant asserts that the work product privilege over the documents was waived by
17 virtue of the unethical conduct of Plaintiff's former counsel, as previously determined by Judge
18 Jenkins.  The main authority on point is *Moody v. Internal Revenue Service*, 654 F.2d 795 (D.C. Cir.
19 1981).  There, the IRS refused to disclose a document to the plaintiff based on the work product
20 privilege.  The document was a "memo to file" written by an IRS attorney and contained details
21 about a meeting held between the lawyer and a federal judge presiding over the receivership of an
22 entity in which the plaintiff had an interest.  *See id.* at 799.  The plaintiff argued that the work
23 product should not apply to the document because it was "the fruit of impermissible legal conduct.
24 According to [the plaintiff], the purposeful exclusion of opposing counsel from the meeting violated
25 the court's rules [concerning communications with the court] and the American Bar Association's
26 ethical standards [again, concerning communications with the court]."  *Id.*

27     The D.C. Circuit agreed with the plaintiff.  It began by noting that the purpose of the
28 privilege is to protect the adversary process.  *See id.* at 800.  It therefore would be

4

> perverse, as [the plaintiff] contends, to allow a lawyer to claim an evidentiary privilege to prevent disclosure of work product generated by those very activities the privilege was meant to prevent. Non-disclosure would then provide an incentive for, rather than against, the disfavored practices. The integrity of the adversary system [which is what the work product privilege is meant to protect] is not furthered by protecting a lawyer who steps outside his role as "an officer of the court . . . work(ing) for the advance of justice while faithfully protecting the rightful interests of his clients." An attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends."

*Id.*

The court, however, did go on to state that, while "an attorney has no right to object to the disclosure of work product made possible by his misconduct," that did "not necessarily mean that the work product privilege is inapplicable to such documents. Unlike the attorney-client privilege, which exists solely for the benefit of the client, . . . the work product privilege creates a legally protectable interest in non-disclosure in two parties: lawyer and client." *Id.* at 801. Therefore, "[a] court must look to all the circumstances of the case, including the availability of alternate disciplinary procedures, to decide whether the policy favoring disclosure outweighs the client's legitimate interest in secrecy. No court should order disclosure under the FOIA or in discovery if the discovery would traumatize the adversary process more than the underlying behavior." *Id.*

The D.C. Circuit did not itself decide whether there had in fact been an ethical violation by the IRS attorney; nor did it decide whether, if so, that violation would vitiate the work product privilege, leaving both matters instead for the lower court to decide on remand. *See id.* at 800. But notably, the court did give the lower court some guidance. First, it indicated that, if the ethical violation would vitiate the privilege, then "only the tainted work product need be released." *Id.* at 801 n.20. Second, and more important for purposes of this case, the court indicated that disclosure would not be an appropriate remedy where the information at issue bore "little relationship to the underlying breach," but, "[i]n this case, of course, if a violation of legal standards occurred, it lay in the attorney's exclusion of the opposing party and his counsel from a meeting; disclosure of what went on at that meeting to that opponent, the [plaintiff] in this FOIA action, would therefore seem to be an appropriate remedy." *Id.* at 801 n.23.

1    In the instant case, Judge Jenkins has already determined, *inter alia*, that Plaintiff's former
2 counsel violated California's ethical rules by initiating unauthorized contact with represented parties
3 -- namely, represented members of the class in *Martinez v. AutoZone* (Los Angeles Superior Court) --
4 - including but not limited to Mr. McDaniel, Mr. Knox, and Mr. Veloz. *See* Order of 12/5/07, at 11-
5 16. This unauthorized contact by former counsel is what yielded the work product at issue now --
6 *i.e.*, the responses to questionnaires, witness statements, and correspondence from witnesses. Given
7 Judge Jenkins's finding of unethical conduct, the question for this Court is whether disclosure of the
8 tainted work product "would traumatize the adversary process more than the underlying behavior."
9 *Moody*, 654 F.2d at 801.

10   The Court does not find that it would. First, because it is only fact work product at issue and
11 not opinion work product, it is unlikely that disclosure would traumatize the adversary process.
12 Second, and more important, as in *Moody*, the tainted work product at issue bears a substantial
13 relationship to the underlying breach -- *i.e.*, Plaintiff's former counsel would not have obtained the
14 responses to questionnaires, witness statements, and correspondence from witnesses if it had not
15 violated the ethical rules and contacted the *Martinez* class members. Notably, another court has held
16 that, where -- as here -- the ethical violation constituted an ex parte communication with a person
17 represented by counsel, the transcript of that communication should be disclosed in spite of the
18 claim that it was protected by the work product privilege. *See Featherstone v. Schaerrer*, 34 P.3d
19 194, 2006 (Utah 2001) (applying principles articulated in *Moody*).

20   The Court acknowledges that there are differences between the instant case and *Moody* and
21 *Featherstone*. In *Moody*, the IRS attorney had allegedly committed an ethical violation by excluding
22 opposing counsel from the meeting with the judge; if the attorney had abided by the ethical rules,
23 then opposing counsel would have been a part of that meeting or at least privy to the
24 communications with the judge. Likewise, in *Featherston*, the plaintiff's attorney had violated the
25 ethical rules by engaging in an ex parte communication with a represented party who was an
26 opponent of the plaintiff; if the attorney had complied with the ethical rules, then he would have had
27 to depose the represented party and the represented party would have been able to obtain a transcript
28 of the proceeding. *See id.* In contrast, in the instant case, there is no guarantee that Defendant

6

would have been privy to any communications with the putative class members/*Martinez* class members if Plaintiff's former counsel had properly followed the ethical rules. Even so, to correct the harm to the adversary system caused by counsel's unethical conduct, there should be disclosure. The adversary process is best protected in the case at bar by putting the parties on an even playing field. *See id.*

However, the names of the putative class members other than Mr. McDaniel, Mr. Know, and Mr. Veloz should be redacted from the documents at issue. There are legitimate privacy interests involved since the putative class members might fear reprisal. *See generally Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652 (1975) (balancing party's right to discovery against privacy interests protected by California Constitution). *Compare Pioneer Elecs. (USA), Inc. v. Superior Court*, 40 Cal. 4th 360373 (2007) (noting that "[c]ontact information regarding the identity of potential class members is generally discoverable, so that the *lead plaintiff* may learn the names of other persons who might assist in prosecuting the case") (emphasis added). Although the questionnaires indicated that the responses might be used in litigation, it is questionable whether the responding witnesses read that statement and understood its implications. Weighed against the privacy interests are Defendant's interests, but Defendant has not articulated why it would need to know the individuals' names. Rather, Defendant primarily claims that the documents at issue may tend to show, *e.g.*, that the allegations of classwide, systemic practices are false. *See* Reply at 1. Specific names would not be needed for this purpose.

Accordingly, the Court does find waiver with respect to the documents at issue based on the ethical violation of Plaintiff's former counsel but holds that the names of the witnesses, other than Mr. McDaniel, Mr. Knox, and Mr. Veloz shall be redacted.

In addition, the Court finds that there are additional grounds for waiver with respect to the documents related to Mr. McDaniel, Mr. Knox, and Mr. Veloz. As indicated at the hearing, Plaintiff did not move to quash the subpoenas served on the three individuals even after none of the individuals filed written objections as required by Federal Rule of Civil Procedure 45. *See* Fed. R. Civ. P. 45(c)(2)(B) (providing that objections "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served"). Plaintiff failed to exercise due diligence in

7

failing to prevent her adversary from gaining access to the subpoenaed documents. *See P&G v. Haugen*, 183 F.R.D. 571 ,574 (D. Utah 1998) (in case in which party claiming that work product had been disclosed to an expert who was thereafter hired by opposing party, taking into consideration the degree to which party consulting the expert "has taken steps to protect any work product" since expert, as nonlawyer, not sensitive to privilege and "may reveal confidential information out of ignorance"); *cf. United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003) (noting that "[w]ork product protection is waived where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information"). In fact, Plaintiff did not even object when Mr. Veloz produced his response to the questionnaire to Defendant or thereafter seek to rectify the disclosure. *See* 6-26 Moore's Fed. Prac. -- Civ. § 26.49[5][e] (stating that, "[i]n cases of inadvertent disclosure, . . . the attorney-client privilege will be preserved if the privilege holder has made efforts reasonably designed to protect the privilege" but that "the privilege will be deemed to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter"); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. 1985) (stating that, in determining whether an inadvertent disclosure gives rise to a waiver, a court should consider the following factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness).

///
///
///
///
///
///
///
///
///

8

## II. CONCLUSION

For the reasons stated above, Defendant's motion to compel is granted. In accordance with Judge Breyer's order, *see* Docket No. 243, Plaintiff shall produce the documents at issue by April 21, 2008. If Plaintiff's former counsel refuses to provide the documents to Plaintiff, Plaintiff shall immediately advise Defendant and the parties shall immediately contact the Court.

This order disposes of Docket No. 205.

IT IS SO ORDERED.

Dated: April 1, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge