IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MORENO ET AL.,

    Plaintiff,

v.

AUTOZONE, INC,

    Defendant.

No. C 05-04432 CRB

**CLASS CERTIFICATION ORDER**

    This case arises out of alleged wage and hour violations at AutoZone's approximately 418 California stores.  Now pending before the Court is Plaintiff Michelle Medrano's motion to certify two classes pursuant to Federal Rule of Civil Procedure 23.  Plaintiff's motion is DENIED as to the "off-the-clock" class for the reasons stated at the certification hearing held on May 30, 2008.  For the reasons set forth below, the Court GRANTS the certification motion as to the "late paycheck" class.

**BACKGROUND**

    According to Plaintiff, AutoZone has a statewide business practice of not paying final pay checks to terminated employees within the time required by California law.  California law requires that employers who discharge an employee pay all earned and unpaid wages "immediately."  Cal. Lab. Code § 201(a).  If an employee gives 72 hours or more notice, then final wages are due on the last day of employment; if an employee does not give notice, then

1  final wages are due within 72 hours.  See id. § 202.  Plaintiff has submitted evidence
2  demonstrating that of 184 former AutoZone employees who worked at two sample California
3  stores, 164 employees received final paychecks after the time required by California law.
4  See Motion for Certification Exh. 35.  According to Plaintiff, the high rate of late paychecks
5  is the result of AutoZone's systematic failure to implement safeguards that would ensure
6  prompt payment of final wages.

7  AutoZone has only one payroll department, see Dessem Depo. 9:11-14, and it is
8  department policy to cut a final check for employees – even employees who give 72 hours
9  notice – only after the payroll department receives notification of the amount of hours to be
10 paid on the final paycheck, see Kublacki Depo. 53:3-54:21.  Since the final check is mailed
11 next day/overnight, an employee who gives notice does not receive a final check on the last
12 day of employment, but at best the next day.

13 AutoZone argues that it is company policy to pay employees on their date of
14 discharge or as required by California law.  See Tift Decl. Exh. A at 37:20-38:1.  Further,
15 AutoZone challenges Plaintiff's statistical evidence on the ground that Plaintiff's expert
16 calculated the difference between receipt of the final wage check and the last work day,
17 rather than between the receipt date and the separation date.  According to AutoZone, an
18 employee might have separated after the last day worked (e.g., separate without prior notice
19 on a Monday after working until the preceding Friday).  Further, AutoZone questions
20 whether some or most of the delays are attributable to justifiable reasons, such as responses
21 to employee tax requests or resolution of disputes over wage, vacation, or expense
22 reimbursements.

23 Plaintiff has proposed the following definition for the late pay class:

> The Late Pay Class consists of all former California employees, whose employment with AutoZone ended within the applicable statutory period prior to the filing of this action and who did not receive all wages when due as required by California law.

## **LEGAL STANDARD**

The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met.  See

2

Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). In turn, the district court must conduct a rigorous analysis to determine that the prerequisites of Rule 23 have been met. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). If a court is not fully satisfied, certification should be refused. Id.

Rule 23(a) requires that all of the following four factors be met: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

Rule 23(b) requires, in relevant part, that one of three additional requirements be met. Here, plaintiffs assert that this case falls within Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters pertinent to the Court's inquiry include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.

## ANALYSIS

I. Rule 23(a) Factors

*1. Numerosity*

Under the first Rule 23(a) factor, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not state the exact number of potential class members; nor is a specific minimum number of class members required. See Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 144 (N.D. Cal. 2004). Rather,

3

1  whether joinder is impracticable depends on the facts and circumstances of each case. See
2  id.
3     AutoZone does not directly contest numerosity, and a challenge to numerosity would
4  certainly fail. If Plaintiff's statistical evidence is extrapolated to all California stores, then as
5  many as 34,000 employees may have received paychecks after the requisite time period
6  (assuming that Plaintiff's evidence is accurate). Under the circumstances, it would be
7  impracticable to join all potential class members without utilization of the class action
8  mechanism.
9     Instead of challenging numerosity, AutoZone argues that Plaintiff has failed to prove
10 the existence of an ascertainable class. See Opp. at 10. Under California law, the party
11 seeking certification bears the burden of proving an "ascertainable class." See Linder v.
12 Thrifty Oil Co., 23 Cal.4th 429, 435 (2000). Rule 23 does not impose an analogous
13 requirement, but even under California's standard, Plaintiff has proposed an ascertainable
14 class. "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a
15 set of common characteristics sufficient to allow a member of that group to identify himself
16 or herself as having a right to recover based on the description." Bartold v. Glendale Federal
17 Bank, 81 Cal. App. 4th 816, 828 (2000). The gist of AutoZone's argument is that because
18 Plaintiff proposes a class defined by relation to the alleged offense, prospective class
19 members will be unable to identify themselves as members of the class. But Ninth Circuit
20 has routinely upheld certification of classes defined by the alleged violation. See, e.g.,
21 Dukes, 509 F.3d at 1174. There is nothing particular about Plaintiff's definition that suggests
22 prospective class members will be unable to identify whether they meet the class definition.
23 Accordingly, the Court should find that Plaintiff has satisfied the numerosity requirement.
24     *2. Commonality*
25     Rule 23(a)(2) requires that common questions of law or fact exist among class
26 members. The commonality preconditions of Rule 23(a)(2) are less rigorous than the
27 companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed
28 permissively. All questions of fact and law need not be common to satisfy the rule; indeed,

one significant issue common to the class may be sufficient to warrant certification. See id. at 1177. Plaintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Plaintiff has proffered persuasive evidence demonstrating that members of the proposed late pay class share significant factual and legal issues. Accordingly, the Court finds Plaintiff has satisfied the dictates of Rule 23(a)(2).

Plaintiffs contend that class members have shared legal issues such as whether class members were subject to California wage and hour laws, whether AutoZone had a policy or practice of paying late final paychecks, and whether AutoZone's conduct was willful. In response, AutoZone maintains that resolving Plaintiff's claims will require delving into individualized fact-specific questions such as whether resignation was communicated, as well as the dates of notice, separation, and receipt of the final paycheck, and whether final paychecks reflected earned or unearned wages.

Plaintiffs have presented three types of evidence of commonality: (1) facts supporting the existence of company-wide policies and practices; (2) expert statistical evidence of a pattern of late final paychecks; and (3) anecdotal evidence from prospective class members of receiving late final paychecks. In conjunction, this evidence suggests that class members' injuries stem from one common source: AutoZone's company-wide practice of disregarding California's paycheck law.

### a) Existence of Company-Wide Practice

AutoZone's Payroll Director stated that there is only one payroll department for the company. See Dessem Depo. 9:11-14. A Payroll Manager for AutoZone stated that the company does not send its payroll employees to seminars to learn about the legal requirements for payment of the final paycheck. See Bussey Depo. 11:14-19.

According to the Payroll Manager, a final paycheck cannot be cut until the payroll department is notified by phone from a representative in the field – such as a store manager

or HR representative – that an employee is terminating their employment. See id. at 12:21-13:7. If the payroll department is notified by noon pacific time, then a check is processed and delivered overnight to the individual's store. If payroll is notified after noon, then the check is processed the next day for overnight delivery. See id. at 13:9-14.

James Kublacki, AutoZone's Regional Vice President for AutoZone, testified that the phone call notifying payroll of the employee's termination is not placed until after the employee's final shift. See Kublacki Depo. at 54:7-12. Thus, even if an employee gave more than 72 hours notice, the phone call notifying payroll of termination would not be placed until on or after the employee's last day. See id. at 54:17; 55:18-19. As a result, it would appear that under AutoZone policy, an employee who gave more than 72 hours notice would never receive their final paycheck on their last day of employment, but at best the day after. Because the proposed class plans to challenge a company-wide practice, a class action presents an efficient and proper vehicle.

### b) Statistical Evidence

Statistical evidence of a pattern of late final paychecks also supports the conclusion that the receipt of late paychecks resulted from company practice rather than individualized problems. Cf. Dukes, 509 F.3d at 1180 ("It is well-established that commonality may be established by raising an inference of class-wide discrimination through the use of statistical analysis.").

Reviewing termination records and paycheck data from two of AutoZone's California stores, Plaintiff's expert Bob Fountain concluded that of 184 employees whose employment terminated, 164 employees – or 89.1% of all terminated employees – were paid after the time required by California law. See Plfs. Exh. 35 at 2. For those 164 employees who received late checks, the average number of days until final paychecks were received was 13.03 days. Id. at 3.

AutoZone challenges the accuracy of Fountain's report, noting that it is based on the mistaken assumption that time penalty claims should be measured from the employee's last

date of work. The relevant date, AutoZone argues, is the date of termination, which can be and often is <u>after</u> the last work date. See Dessem Decl. ¶ 7.

Assuming AutoZone is correct, Plaintiff argues that the data still supports her position. If the receipt of last paycheck is measured from the date of termination, termination and paycheck records suggest that 148 of the 184 terminated employees – or 80.4% – received their last paycheck an average of 9.8 days late. See Plfs. Exh. 44 at 18.

Defendant contends that even if last paychecks were late a substantial majority of the time, the delay may not be actionable because the paychecks may reflect <u>unearned</u> wages such as incentive pay for sales or contest results that become final after termination. See Dessem Decl. ¶ 10-11. To be sure, Plaintiff's estimate that 80.4% of AutoZone employees receive late paychecks may be marginally inflated due to unique circumstances. But AutoZone fails to persuasively explain why an employee's last paycheck would not <u>typically</u> reflect earned wages. A final paycheck reflecting unearned wages would appear – in light of the record – to be the exception rather than the rule. Therefore, Plaintiff's statistical evidence is highly probative and suggests that receipt of late final paychecks is a systematic, rather than individualized, problem.

### c) Anecdotal Evidence

Circumstantial evidence is commonly used to bolster statistical proof by bringing "the cold numbers convincingly to life." <u>Dukes</u>, 509 F.3d at 1182 (quoting <u>Int'l Bhd. of Teamsters v. United States</u>, 431 U.S. 324, 339 (1977)). Plaintiff has submitted declarations from five former AutoZone employees detailing the company's failure to deliver timely final paychecks.

Daniel Hernandez stated that he was terminated by AutoZone in 2005, but did not receive a final paycheck until one week later. See Hernandez Decl. ¶ 3. James William McDaniel was terminated but did not receive all wages due on his last day of employment; rather, he received his final week's wages approximately ten days later. See McDaniel Decl. ¶ 14. David Michael Riepe quit with at least 72 hours notice, but did not receive all wages due until the day after his last day of work. See Riepe Decl. ¶ 3. Martin Veloz, Jr. quit with

more than 72 hours notice, but did not receive his final wages until four weeks later. See Veloz Decl. ¶ 4. Plaintiff Medrano was paid at least eleven days after her last day of work. See Moore Decl. ¶ 11.

AutoZone contests the probity of the declarations proffered by Plaintiff. Using the McDaniel declaration as an example, AutoZone contends that McDaniel admitted in a deposition that he was paid on the day of discharge and argues that any late paycheck was likely the result of McDaniel's own failure to properly record time. See Supp. Dessem Decl. ¶¶ 6-10.

To be sure, anecdotal evidence like that proffered by Plaintiff is insufficient to establish commonality by itself. But even if the McDaniel declaration is factually incorrect, the remaining declarations at least support Plaintiff's contention that commonality is present because of a shared experience of receiving late final paychecks.

When considered in its totality, the Court concludes that the evidence proffered by Plaintiff is sufficient to establish commonality in the late pay class. The class challenges a common core of facts – AutoZone's practice of cutting final paychecks only after an employee's final shift – through a common legal theory. Whether or not Plaintiff's evidence bears out at trial, it is plainly sufficient to support a finding of commonality at this stage in the proceedings.

*3. Typicality*

The typicality requirement of Rule 23(a)(3) "examines the relationship of facts and issues between the representatives and the class." Dukes, 222 F.R.D. at 144. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Because Medrano allegedly received her last paycheck 11 days late, Defendant does not challenge the typicality of Medrano with respect to the late pay class.

*4. Adequacy*

8

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. See Hanlon, 150 F.3d at 1020. AutoZone forwards four arguments for disqualifying ILG as counsel, but the Court find all arguments unpersuasive.

### a) Conflict with Martinez Class Members

First, AutoZone argues that ILG must be disqualified for the same reason that Judge Jenkins disqualified Bailey Pinney: because the firm represents a party objecting to the Martinez settlement. Judge Jenkins disqualified Bailey Pinney from representing Medrano because the firm simultaneously represented Medrano in objecting to a class action settlement in Martinez v. AutoZone, 2007 WL 1395477 (Cal. Ct. App. 2007), in which the class settled claims alleging that AutoZone failed to authorize and permit employees to take statutory meal breaks and rest breaks. The Court found that Medrano, as an objector to the Martinez settlement, had an actual conflict of interest with, and adverse to, three declarants represented by Bailey Pinney who were also non-objecting members of the Martinez class. See Disqualification Order at 7.

AutoZone argues that ILG should be disqualified because ILG also represented one of the three objectors to the Martinez settlement: Carl Myart. See Def. Exh. UU. However, the question is whether ILG currently represents clients with adverse interests. See State Bar Rule of Professional Conduct 3-310(c)(3) ("A member shall not, without the informed written consent of each client . . . [r]epresent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.") (emphasis added). AutoZone has introduced no evidence suggesting that Myart is still objecting to the Martinez settlement.

AutoZone also contends that because Medrano continues to object to the settlement in Martinez, no attorney can represent Medrano without necessarily having a conflict of interest with non-objecting members of the Martinez class who will also be covered by Medrano's

9

1 proposed class definition. But the problem Judge Jenkins identified with Bailey Pinney was
2 that the firm attempted to represent clients in this matter – prospective class members – while
3 at the same time representing Medrano in the Martinez matter. As the state rule makes clear,
4 Bailey Pinney could not – without informed consent – represent Medrano in Martinez while
5 concurrently representing, in this case, class members who were non-objectors in Martinez.

Of course, because ILG does not – as far as the Court is aware – represent Medrano in Martinez, Rule 3-310(c)(3) is of no moment. Thus, ILG should only be disqualified for representing Medrano if Medrano's interests are antagonistic to prospective class members in this case. See State Bar Rule of Professional Conduct 3-310(c)(1), (2) (providing that a member shall not, without informed written consent, represent more than one client in a matter in which the clients' interests potentially or actually conflict). In the Court's opinion, both Medrano and prospective class members have the same interest in this case: an optimal result. Assuming ILG only represents Medrano in this case, there is no reason they could not protect her interests while also forwarding the interests of the class.[1]

### b) Representation of Named Plaintiff in Myart

AutoZone argues that ILG cannot adequately represent prospective class members because the firm represents the named plaintiff in a parallel class action against AutoZone in state court. In Myart v. AutoZone, lead plaintiff Carl Myart alleges, inter alia, that AutoZone violated California Labor Code §§ 201 and 202 by failing to pay final wages in a timely manner.

AutoZone relies primarily on Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995), in which the Ninth Circuit held that even the appearance of divided loyalties

---

[1] Arguably, Medrano herself is an inadequate representative because there is a risk that she will accept a less-than-optimal settlement in this case in exchange for resolution of her objections in Martinez. See Strong v. Arkansas Blue Cross and Blue Shield Inc., 87 F.R.D. 496, 510 (D. Ark. 1980). However, courts have generally found speculative or hypothetical risks of inadequate representation insufficient to justify denial of certification on the basis of Rule 23(a)(4). See Wilkinson v. F.B.I., 99 F.R.D. 148, 160 (C.D. Cal.1983) ("A merely speculative possibility of inadequate representation is not a sufficient basis to find that Rule 23(a)(4) is not satisfied."); 5 James Wm. Moore et al., Moore's Federal Practice § 23.25[4][b][ii] (3d ed.1998) (stating that to find inadequacy of representation "most courts hold that the conflict must be more than merely speculative or hypothetical").

10

justifies disqualification of class counsel.  As the court explained in Kayes, "[t]he 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict."  Id.

As Judge Jenkins recognized, "[p]rosecuting claims against the same defendant in different actions can create a conflict of interest for the attorneys, placing a class at risk that its interests will be compromised for the benefit of parties in another action."  Moreno v. Autozone, Inc., 2007 WL 4287517, *15 (N.D. Cal. 2007).  However, AutoZone fails to persuasively explain how ILG's simultaneous representation might undermine its ability to adequately represent each class under the circumstances.  For example, there is no suggestion that the Myart plaintiffs and Medrano plaintiffs have antagonistic interests because AutoZone would be unable to satisfy a judgment in each case.  See Sullivan v. Chase Inv. Serv., Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978).

AutoZone argues that ILG has already revealed its divided loyalties by moving (unsuccessfully) to amend a protective order in Medrano so that confidential documents disclosed by AutoZone pursuant to the order could be used in the Myart litigation.  According to AutoZone, ILG cannot simultaneously represent Myart – who has an interest in disclosure of AutoZone's confidential documents – and Medrano – who agreed to preserve the interests of non-parties by maintaining the confidentiality of their wage and personnel information.  But this argument is based on the assumption that it is Medrano – rather than AutoZone – who has the genuine interest in preserving confidentiality.  While Medrano signed the confidentiality agreement, AutoZone fails to explain why amending the agreement to allow the documents to be used in Myart conflicts with Medrano's interest in this litigation.  It is actually AutoZone, not Medrano, whose interests conflict with Myart's.

The Court concludes that ILG is not seeking to concurrently represent clients with conflicting interests in Medrano and Myart.  Unless and until AutoZone can more persuasively explain how the interests of Myart and Medrano fail to align, the Court finds ILG to be an adequate representative.

///

### c) Appearance of Impropriety

AutoZone argues that ILG should be disqualified on the basis of Canon 9 of the ABA Model Code of Professional Responsibility, which provides that a lawyer should avoid even the appearance of professional impropriety. See In re Coordinated Proc. Petroleum Prods. Antitrust Litig., 658 F.2d 1355, 1360 (9th Cir. 1981) (holding that Canon 9 may serve as a basis for disqualification). AutoZone argues that ILG's conduct "actually produces an appearance of impropriety," id., because the firm associated Bailey Pinney into its Myart action while AutoZone's disqualification motion was pending in this case. AutoZone contends that ILG's conduct demonstrates both poor judgment and "clouds the propriety of its relationship with Bailey Pinney." In essence, AutoZone believes that ILG and Bailey Pinney have such a close relationship that disqualification of one should bar the other.

Aligning itself with Bailey Pinney in Myart while the Court contemplated a disqualification motion in Medrano certainly demonstrated poor judgment on ILG's part. That said, parties have an important interest in being represented by counsel of their choice. ILG has not demonstrated itself so deficient that disqualification is appropriate. Further, although ILG and Bailey Pinney have a working relationship, AutoZone bears the burden of coming forth with additional evidence of impropriety if ILG is to suffer the consequences of Bailey Pinney's conduct.

Finally, AutoZone proposes the possibility that ILG has entered into this action for the sole purpose of obtaining AutoZone's confidential documents in order to further the Myart litigation. The defendant should rest assured that the Court is capable of ensuring through oversight that ILG manage this litigation for the benefit of prospective class members, and therefore disqualification of ILG is unnecessary.

### d) Lack of Diligence

AutoZone requests that ILG be disqualified as class counsel for lack of diligence. According to AutoZone, the fact that ILG needed more than six months to prepare for the class certification hearing demonstrates that the firm is incapable of adequately representing

12

a sizeable class.  Diligence is certainly a factor for the Court to consider, but AutoZone has identified no delay that at this point requires disqualification.

II. Rule 23(b)

In addition to meeting the requirements of Rule 23(a), Medrano bears the burden of satisfying one of the requirements in Rule 23(b).  Medrano argues that the late paycheck class satisfies Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The Court agrees that common questions predominate and that a class action would be superior to Division of Labor Standards Enforcement hearings.

*1. Predominance of Common Issues*

In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998).

The predominance requirement is satisfied as to the late pay class because "common questions represent a significant aspect of the case."  Id. (quotation omitted).  Plaintiff plans to challenge an AutoZone practice – of not cutting final checks until after an employee's final shift – and whether that practice resulted in widespread late paychecks.  The Court will have to grapple with individual issues, such as whether a late paycheck reflects earned or unearned wages, but that kind of determination should be possible by reference to AutoZone pay records.  Thus, most individual issues could be accomplished in administrative fashion and without the need for testimony.

///

13

*2. Superiority*

AutoZone argues that a class action is not the superior method for adjudicating Plaintiff's claims because the California Division of Labor Standards Enforcement provides a hearing process that would be cheaper, quicker, and more efficient. But California courts have rejected the notion that so-called "Berman" hearings are equivalent to litigation. As explained in Bell v. Farmers Insurance Exchange, 115 Cal. App. 4th 715, 745-46 (2004), such hearings have "several disadvantages for the employee." The employer is typically represented by counsel, but if the employee retains counsel, fees are not recoverable. See id. Moreover, a losing employer has a right to a trial de novo in state court where the ruling of the hearing officer is entitled to no deference. Id. The fact that a "Berman" hearing is entitled to no deference is reason enough to conclude that such hearings do not provide an adequate alternative.

## CONCLUSION

The motion for class certification is GRANTED as to the late paycheck class and DENIED as to the off-the-clock class.

**IT IS SO ORDERED.**

Dated: May 30, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE